UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TAMMY JOHNSON-TINGLEY,

    Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security,

    Defendant.

No.  1:16-CV-03201-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 13 and 14. Ms. Johnson-Tingley brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits and Supplemental Security Income under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F.  After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Ms. Johnson-Tingley's Motion for Summary Judgment.

# I.   Jurisdiction

Ms. Johnson-Tingley protectively filed for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI on October 23, 2012. AR 18.  Her alleged onset date is July 30, 2012. AR 18. Ms. Johnson-Tingley's application was initially denied on December 14, 2012, AR 18, and on reconsideration on June 12, 2013, AR 18.

A hearing with Administrative Law Judge ("ALJ") Laura Valente occurred on February 10, 2015. AR 18.  On September 16, 2013, the ALJ issued a decision finding Ms. Johnson-Tingley ineligible for disability benefits. AR 21-36.  The Appeals Council denied Ms. Johnson-Tingley's request for review on March 21, 2015, AR 1-6, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Johnson-Tingley timely filed the present action challenging the denial of benefits, on May 15, 2015. ECF No. 3. Accordingly, Ms. Johnson-Tingley's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II.   Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 &

416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of

performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.  Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

1992).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").  Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Ms. Johnson-Tingley was 48 years old at the alleged onset date. AR 595. She dropped out of school in the ninth grade and has never obtained her general education diploma. *Id.* She has no college or formal vocational training. *Id.* Ms. Johnson-Tingley is the mother of two children. AR 64, 85.

Among the conditions cited in Ms. Johnson-Tingley's medical record are obesity, diabetes mellitus, degenerative disc disease, sprains, gastrointestinal

disorders, anxiety disorder, affective disorder, personality disorder and somatoform disorder. AR 20. A disability report from July 3, 2013, also lists multiple sclerosis, panic attacks, depression, high blood pressure, lower back pain, neck pain, and shoulder pain. AR 329.

Ms. Johnson-Tingley has previous work experience as a cashier in various positions from 1999 through 2012. AR 46-52. Ms. Johnson-Tingley was in a car accident in May 2005. ECF No. 13 at 1. Post-accident she has been fired from multiple positions due to missing too much work for health problems. AR 46-52.

## V.    The ALJ's Findings

The ALJ determined that Ms. Johnson-Tingley was not under a disability within the meaning of the Act from July 30, 2012, her alleged date of onset.  AR 33.

**At step one**, the ALJ found that Ms. Johnson-Tingley had not engaged in substantial gainful activity since July 30, 2012, her alleged onset date (citing 20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*).   AR 20.

**At step two**, the ALJ found Ms. Johnson-Tingley had the following severe impairments: obesity, diabetes mellitus, degenerative disc disease, sprains, gastrointestinal disorders, anxiety disorder, affective disorder, personality disorder and somatoform disorder (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). AR 20.

At **step three**, the ALJ found that Ms. Johnson-Tingley did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 23.

At **step four**, the ALJ found Ms. Johnson-Tingley has the residual functional capacity: (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) sit, stand and walk for six hours each in an eight-hour workday; (3) limited to occasional overhead reaching bilaterally; (4) no limitations balancing and can frequently stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; (5) sufficient concentration to understand, remember and carry out simple repetitive tasks ; and (6) maintain concentration, pace, and attention in two hour increments for simple, repetitive task work for eight hours in an eight-hour workday; (7) work superficially and occasionally with the general public; (8) work in the same room and vicinity with an unlimited number of coworkers, but should not work in coordination with them; (9) make simple workplace decisions as would be required for simple, repetitive task work; (10) should not be required to drive; (11) can interact occasionally with supervisors and with occasional interaction, she is likely to respond appropriately to supervisor criticism; and (12) with these restrictions, complete a normal day and workweek. AR 24-31.

The ALJ determined that Ms. Johnson-Tingley is capable of performing her past relevant work as a cashier II, telephone solicitor, and cafeteria attendant. AR 31.

At **step five**, the ALJ found that although Ms. Johnson-Tingley is capable of performing past relevant work, and there are other jobs existing in the national economy that she is also able to perform. AR 31.

## VI.    Issues for Review

Ms. Johnson-Tingley argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly weighing the medical opinions; (2) improperly assessing Ms. Johnson-Tingley's medically-determinable severe impairments; (3) improperly assessing the residual functional capacity and finding that Ms. Johnson-Tingley can perform past relevant work and adjust to other work in the economy; and (4) discrediting Ms. Johnson-Tingley without specific, clear and convincing reasons to do so.

## VII.   Discussion

**A. The ALJ Properly Weighed the Medical Opinion Evidence.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those

who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

It is the Commissioner's responsibility, and not a physician's, to make the determination of whether a claimant's limitations meet the statutory definition of disability. *McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011).

### a. Dr. Jamie Simmons, M.D.

Dr. Jamie Simmons, M.D., was Ms. Johnson-Tingley's treating psychiatrist. AR 29. Nevertheless, the ALJ gave "minimal weight" to her opinions because the treatment records do not contain objective findings in examinations that support the assessed limitations, and the overall record for all sources do not support the opinions of Dr. Simmons. AR 29-30. Ms. Johnson-Tingley argues that the ALJ erred in assigning this amount of weight to her treating psychiatrist's opinions. ECF No. 13 at 5-8.

An ALJ may properly discredit a doctor's opinion if it is contradicted by objective evidence or other findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In particular, Dr. Simmon's June 10, 2014, mental source statement form opining Ms. Johnson-Tinlgey's limitations provides "minimal rationale" and is unsupported by the record. AR 30, 1196-99. In addition, the Ninth Circuit has "repeatedly held that the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusion. *Molina*, 674 F. 3d 1110-11.

The ALJ asserts that the only objective evidence Dr. Simmons presented was Ms. Johnson-Tingley's score of 20/30 on the Montreal Cognitive Assessment ("MOCA"),[1] AR 1196-99, however, the ALJ questioned whether Ms. Johnson-Tingley gave her best efforts on that testing. AR 30. Dr. Simmons opinions were also not confirmed by other sources in the record. Records from Ms. Johnson-Tingley's primary care provider show her memory was normal and that she was fully oriented at visits. AR 30, 1266, 1269, 1272. On September 24, 2013, upon examination, Ms. Johnson-Tingley was oriented to time, place, and person and recent memory was normal. AR 22, 1269. On October 14, 2014, Ms. Johnson-Tingley's judgment was good, she was alert and oriented to time, place and person, and her recent and remote memory was normal. AR 22, 1266. Therefore, the ALJ did not err in assigning this opinion minimal weight.

When assigning weight to Dr. Simmons opinions, the ALJ also noted that some of her opinions were internally inconsistent. Dr. Simmons opined that Ms. Johnson-Tingley was not significantly limited in abilities to maintain attention and concentration for extended periods of time, perform activities with a schedule,

---

[1] A score of 26/30 is considered normal. *See* "Montreal Cognitive Assessment," MOCATEST.ORG, http://www.mocatest.org/pdf_files/instructions/MoCA-Instructions-English_2010.pdf (last visited November 6. 2017).

The Montreal Cognitive Assessment (MoCA) was designed as a rapid screening instrument for mild cognitive dysfunction. It assesses different cognitive domains: attention and concentration, executive functions, memory, language, visuoconstructional skills, conceptual thinking, calculations, and orientation. Time to administer the MoCA is approximately 10 minutes. The total possible score is 30 points; a score of 26 or above is considered normal.

maintain regular attendance, and be punctual within customary tolerances. AR 30, 1196-1199. Dr. Simmons also noted that Ms. Johnson-Tingley had no difficulties in maintaining concentration, persistence, and pace. *Id*. However, she also opined that the claimant would be off task over 30 percent of the time during a 40-hour workweek. AR 1196. In addition to this, Dr. Simmons opined that Ms. Johnson-Tingley was moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors, but also stated that the claimant had no difficulties in maintaining social functioning. *Id*. Because inconsistencies between a physician's opinion and the medical record are sufficient grounds to reject an opinion, the ALJ did not err in assigning minimal weight to Dr. Simmons opinions. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### b. Dr. Rox C. Burkett, M.D.

Dr. Rox C. Burkett, M.D., reviewed Ms. Johnson-Tingley's medical records on March 23, 2015, at the request of Ms. Johnson-Tingley's attorney, Mr. Tree. AR 30, 1301-5. The ALJ assigned "minimal weight" to the opinion Dr. Burkett issued due to inconsistencies between his opinion and the recent medical records as well as the fact that he was obtained by counsel to "bolster" Ms. Johnson-Tingley's disability claim. AR 30. Ms. Johnson-Tingley claims the ALJ did so in error. ECF No. 13 at 8-12.

1    In his discussion of Ms. Johnson-Tingley's medical evidence, Dr. Burkett

2    referenced things such as foot drop and right sided weakness, however, those

3    symptom complaints date back to 2007 and records show that Ms. Johnson-

4    Tingley returned to work after that time period. AR 30, 1301-5. In addition to this,

5    the medical records from the relevant time period do not mention foot drop and

6    Ms. Johnson-Tingley's gait and strength were repeatedly described as normal by

7    other treatment providers. AR 30, see e.g., 1100, 1104, 1203, 1219.

8        Dr. Burkett also referenced findings from the 2014 Selah Clinic's MRI's of

9    the Ms. Johnson-Tingley's brain as suggestive of multiple sclerosis and chronic

10   demyelinating neuritis, but Ms. Johnson-Tingley was ruled out for multiple

11   sclerosis and was not receiving any treatment for chronic demyelinating neuritis.

12   AR 30, 1181. Dr. Burkett also referenced headaches, but Ms. Johnson-Tingley was

13   able to work in the past with headaches and records from the relevant period do not

14   show that the headaches significantly limit her ability to do basic work and she is

15   not receiving any treatment for them. *Id*. When a doctor's opinion is based "to a

16   large extent" on the claimant's self-reports, and the claimant's subjective

17   complaints have been properly discredited, an ALJ may give limited weight to that

18   opinion. *Tommasetti*, 533 F.3d at 1041. In addition to this the Ninth Circuit has

19   stated, "when evaluating conflicting medical opinions, an ALJ need not accept the

20   opinion of a doctor if that opinion is brief, conclusory, and inadequately supported

by clinical findings." *See Bayliss*, 427 F.3d at 1216 *citing to Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

It was appropriate for the ALJ to assign minimal weight to Dr. Burkett's opinion due to lack of supporting evidence and contradictory findings, coupled with the opinion being solicited by counsel in order to bolster Ms. Johnson-Tingley's claims. *See Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996) (recognizing that although the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them, ALJ's have also been permitted to question a doctor's credibility because the doctor's opinion letter had been solicited by claimant's counsel).

### c. Dr. Emma J. Billings, Ph.D.

Dr. Emma J. Billings, Ph.D., performed a consultative psychological evaluation and rated the Ms. Johnson-Tingley's Global Assessment of Functioning ("GAF") on May 30, 2013. AR at 28, 600. The ALJ assigned "some weight" to Dr. Billings' opinion. AR 28. Ms. Johnson-Tingley argues that the ALJ failed to give a specific, legitimate reason to giving less weight to Dr. Billings' one of findings.

In her report, Dr. Billings stated that Ms. Johnson-Tingley showed memory difficulty maintaining attention and concentration during complex mental tasks and that it was necessary to extend testing time 30 minutes past normal because she

was slow to respond to and complete many of the activities in the evaluation. AR 28, 601. The ALJ accepted that Ms. Johnson-Tingley would have difficulty with complex mental tasks and accommodated this finding by factoring it into limiting Ms. Johnson-Tingley to simple, repetitive task work. AR 28. However, the ALJ assigned limited weight to the report that it took 30 minutes longer than normal for Ms. Johnson-Tingley to complete the evaluation because other treatment care providers did not report that the she was slow to respond and because her mental status and activities showed that she can perform simple, repetitive task work at an acceptable pace. *Id*. Further, records from Ms. Johnson-Tingley's primary care provider do not show that her memory was abnormal. AR 22. *See supra* at 12. Therefore, the ALJ did not err in assigning this opinion minimal weight. *See* Bayliss, at 1216 (stating that if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence).

**B. The ALJ Properly Assessed Ms. Johnson-Tingley's Medically-Determinable Severe Impairments.**

At step two in the five-step sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight

abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is "a de minimis screening device [used] to dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a medically severe impairment only when the conclusion is clearly established by the record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)). A diagnosis from an "acceptable medical source," such as a licensed physician or certified psychologist, is necessary to establish a medically determinable impairment. 20 C.F.R. § 416.913(a).

Under step 2, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)).

Ms. Johnson-Tingley argues that the ALJ erred by finding that she did not have the severe medically-determinable impairments of chronic inflammatory demyelinating polyneuritis, fibromyalgia and dementia. ECF No. 13 at 14.

### a. Chronic Inflammatory Demyelinating Polyneuritis

A report from October 30, 2014, by Dr. Laura Wulff, M.D., showed that Ms. Johnson-Tingley's problems included chronic inflammatory demyelinating polyneuritis. However, the ALJ did not consider this because Dr. Wulff did not

include this condition among the diagnoses rendered that day or at a prior evaluation a week before. AR 22, 1259, 1263. In addition, this condition was also listed in the problem list on a chart note by Dr. Marciano Capati Jr., M.D., on October 14, 2014, but he also did not list it among the diagnoses he rendered. AR 28, 1267. For these reasons and because she was not receiving any treatment for chronic inflammatory demyelinating polyneuritis, the ALJ properly did not include it as one of Ms. Johnson-Tingley's severe impairments.

### b. Fibromyalgia

The ALJ notes that records from 2005 and 2006 show that fibromyalgia was suggested as a possible diagnosis, but also that the claimant was not formally diagnosed with this condition. AR 22, 981, 962. In 2014, Dr. Gordon Irving, M.D., diagnosed Ms. Johnson-Tingley with fibromyalgia because of her history of widespread pain and based on his report that she had 11/18 tender points, more than three axial body areas and pain for more than three months. AR 22, 1191-92. Despite this diagnosis, the ALJ claimed the record did not support a diagnosis of this condition. AR 22. The ALJ pointed to Ms. Johnson-Tingley's history of pain not being in all four quadrants, and that medical records do not show any report of her complaining of pain in the left side of her body or below the waist. *Id*. For these reasons the ALJ appropriately found that fibromyalgia does not qualify as

one of Ms. Johnson-Tingley's severe impairments because a claimant cannot rely on a physician's diagnosis of a condition alone. SSR 12-2 at *2.

### c. Dementia

On December 30, 2013, Dr. Simmons diagnosed Ms. Johnson-Tingley with dementia. AR 22, 1243. Dr. Simmons noted that a prior doctor had commented that Ms. Johnson-Tingley could not identify the previous president, but that the doctor suspected this was attributable to poor effort, if not actually intentional. AR 22, 1236-55. On February 7, 2014, Dr. Simmons quizzed Ms. Johnson-Tingley on the current and previous president and she was unable to identify the previous president after two attempts. AR 22 23F5. Dr. Simmons was of the opinion that Ms. Johnson-Tingley gave good effort during this questioning and again diagnosed her with dementia. *Id.*

Despite Dr. Simmons diagnosis, the ALJ pointed to records from Ms. Johnson-Tingley's primary care provider do not show that her memory was abnormal. AR 22. *See supra* at 12, 16. For instance, on September 24, 2013, upon examination, Ms. Johnson-Tingley was oriented to time, place, and person and recent memory was normal. AR 22, 1269. On October 14, 2014, Ms. Johnson-Tingley's judgment was good, she was alert and oriented to time, place and person, and her recent and remote memory was normal. AR 22, 1266. In addition to these findings, the ALJ also noted that Dr. Simmons did not review the primary care

provider's records and was unaware of the discrepancies when formulating her diagnoses.

The ALJ provided a well-reasoned explanation for her finding at step two, and the Court determines no error.

## C. The ALJ Properly Assessed Ms. Johnson-Tingley's RFC, PRW, and Ability to Adjust to Other Work in the Economy.

Ms. Johnson-Tingley attempts to reargue the same issues in her challenge to the ALJ's step four finding that she was able to return to her past relevant work and the ALJ's step five finding that there were alternative jobs available. Ms. Johnson-Tingley bases her argument on the hypothetical posed to the vocational expert, which she asserts was incomplete. ECF No. 1 at 16-18. Specifically, she challenges the ALJ disregarding medical reasons without sufficient reason to do so; however, the Court has already found no error in the ALJ's weight assigned to the medical opinion. *See supra* at 11-16. The Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F. 3d at 1111; see also *Thomas*, 278 F. 3d at 954 (if the "evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").

**D. The ALJ Did Not Err By Discrediting Ms. Johnson-Tingley.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at 1039. First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). "General findings

are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester,* 81 F.3d at 834 (as amended).

In briefing, Ms. Johnson-Tingley points to several pieces of evidence that she asserts proves ample objective evidence of her complaints. ECF No. 13 at 14-16 . The ALJ is the ultimate arbiter of the evidence, and the Court will not reverse the ALJ's evaluation because one party disagrees with the threshold of required evidence. *See, e.g., Molina*, 674 F.3d at 1111; *Thomas,* 278 F.3d at 954.

The ALJ identified multiple reasons for discrediting Ms. Johnson-Tingley. First, Ms. Johnson-Tingley claims that the ALJ improperly discredited her for not taking pain medications or seeking other pain treatment in 2013-2014 because in her opinion nothing helped. ECF No. 13 at 18. However, the ALJ notes that treatment records from 2013 and 2014 make limited mention of neck and back pain. AR 27. And treatment records after 2008 make little mention of shoulder pain. AR 27, 1019-1083, 1200-1235, 1256-1294.

In addition to this, the ALJ points to Ms. Johnson-Tingley being seen once at the Swedish Pain Center on May 22, 2014, but never attending a six week follow up as she was supposed to. AR 27, 1195. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]nadequately explained failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony."). A claimant's statements

may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. When refusing prescribed treatment, the reasons presented for not following the treatment must be related to the mental impairment and not a matter of personal preference. *Id*.

Second, Ms. Johnson-Tingley believes that the ALJ erred by discrediting her for her GI symptoms. ECF No. 13 at 19. The record shows that the ALJ properly looked to evidence that her gastroesophageal reflux disease symptoms improved with omeprazole. AR 27. *See Tommasetti*, 533 F.3d at 1040 (ALJ may consider a claimant's response to treatment in finding disability). And although she reported intermittent abdominal pain, no etiology was found for these complaints in 2012 and 2013 exams. AR 27, 489, 1270. Ms. Johnson-Tingley also, complained of constipation at times, but the symptoms did not last 12 months. AR 27, 1212, 1256.

Third, Ms. Johnson-Tingley asserts that the ALJ improperly discredited her for her anxiety and panic attacks. ECF No. 13 at 19. The ALJ pointed to Ms. Johnson-Tingley complaining of such symptoms in 2006 but subsequently working in occupations that entailed dealing with the public such as cashiering and working at the fairgrounds. AR 27. *See, e.g., Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988) (a claimant's ability to continue working despite impairments tend to support a finding the impairments are not disabling). Additionally, on January 3,

2013, Ms. Johnson-Tingley also reported having panic attacks every other day, however, on January 14, 2013 she was observed to have normal mood and affect. AR 28, 1251, 1253.

Lastly, Ms. Johnson-Tingley claims that the ALJ improperly discredited her for "some inconsistencies," ECF No. 13 at 19, because the ALJ identified the following: On September 15, 2013, Ms. Johnson-Tingley told her psychiatrist that she had not taken her Paxil medication in three months and that she was waking with panic attacks once a week and presented herself as anxious with dysphoric mood. AR 28, 1237. Yet, when she was seen by her primary care provider the next month she presented with normal mood and affect. AR 28, 1266. And, on September 25, 2013, Ms. Johnson-Tingley reported that she had stopped taking her medication three months earlier due to cost and presented as anxious with dysphoric mood. AR 28, 1246. However, when see by her primary care provider on September 24, 2013, she presented as active and alert with normal mood and affect. AR 28, 1269. And although Ms. Johnson-Tingley's visits with her psychiatrist led to a diagnosis of dementia, other treatment records show that she was observed to have normal orientation and memory and that she did not have the angry, hostile manner towards these providers that she has connected to her dementia. AR 28. Finally, despite making a statement that she had only been outside once in the prior month, Ms. Johnson-Tingley left her home on four

different occasions that month to attend medical appointments. AR 27, 314, 1230, 1251, 1253, 1271.

The ALJ interpreted these inconsistencies as evidence that Ms. Johnson-Tingley's subjective complaints were not present or as severe as she indicated. This was a permissible, rational interpretation that is supported by substantial evidence, *see Tommasetti*, 533 F.3d at 1040, and the Court finds no error with the ALJ's determination.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

3.  **Judgment shall be entered in favor of Defendant** and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 17th day of November, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge